[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10349

_____

D.C. Docket No. 8:09-cv-01980-SDM-AEP

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEP 26, 2011
JOHN LEY
CLERK

RONNI VIOLA,
on behalf of herself and those similarly situated,

Plaintiff-Appellant,

versus

COMPREHENSIVE HEALTH MANAGEMENT, INC.,
a Florida corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 26, 2011)

Before MARCUS, WILSON and COX, Circuit Judges.

PER CURIAM:

Ronni Viola ("Viola") appeals the district court's grant of summary judgment

in favor of Comprehensive Health Management, Inc. ("CHMI"). The district court

found that Viola was exempt from overtime pay under the administrative exemption of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").[1]  We affirm.

CHMI, a wholly-owned subsidiary of WellCare Health Plans, Inc. ("WellCare"), provides health insurance to Medicaid- and Medicare-eligible beneficiaries.  Viola was employed by CHMI from October 2007 through March 2009, serving first as a Community Event Coordinator earning a salary of $45,000 per year and later as a Senior Community Outreach Associate earning a salary of $57,000 per year until the termination of her employment.  The core duties of Viola's jobs were similar and involved the marketing and promoting of WellCare in the local community (Ocala and Marion County, Florida) through networking with local organizations, organizing community events, and developing a marketing strategy for enrollment events.  Viola's primary role at CHMI was to promote WellCare.  Viola had discretion in choosing where and to whom to market, and made such decisions through research and networking.  Viola was the only employee of CHMI who promoted the Medicare side of WellCare in her area.  She had no set hours nor any time requirement for reporting to or leaving work for the day or keeping track of her hours.  She also had the liberty to take breaks or run personal errands at her

---

[1]This action was initially filed as a collective action against CHMI, but the parties executed a Joint Stipulation for Dismissal of Opt-in Plaintiffs Without Prejudice, which was approved by the district court.  Consequently, Viola is the sole appellant.

convenience throughout the day. Viola consistently worked more than forty hours per week.

Viola sued CHMI alleging that she worked more than forty hours per week, but was not paid overtime, in violation of the FLSA. The FLSA exempts any employee employed in a bona fide administrative capacity from the general rule that employees are entitled to overtime compensation for time worked over forty hours in a workweek. 29 U.S.C. §§ 207(a)(1), 213(a)(1). The parameters of the FLSA's administrative exemption are articulated in the United States Department of Labor ("DOL") regulations. *See* General Rule for Administrative Employees, 29 C.F.R. § 541.200 *et seq.* Under DOL regulations, an employee qualifies for the administrative exemption if (1) the employee is compensated on a salary or fee basis not less than $455 per week; (2) the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." *Id.* at 541.200(a). The first prong of the administrative exemption test–that Viola earned more than $455 per week–is not disputed. Viola argues, however, that the district court erred in granting summary judgment to CHMI because

genuine issues of material fact exist as to the second and third prongs of the test. We address the second and third prongs in turn.

Viola attempts to create an issue of fact as to the second prong of the administrative exemption test: whether her work was related to the management or general business operations of CHMI. Her attempts fail. Work that is directly related to "management or general business operations includes, but is not limited to, work in functional areas such as . . . advertising; marketing; . . . public relations, . . . legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b). Viola stresses the fact that she denied "ever performing all of the factors" in the DOL regulations. (Appellant Br. at 10.) However, because the regulations merely provide a non-exclusive list of job functions that fall under the exemption, it is not necessary that an employee perform all of the functions listed in the regulations to qualify as exempt. Of the listed job functions, Viola's position arguably qualifies under four separate functions–namely, advertising, marketing, public relations, and legal and regulatory compliance. This determination is consistent with the record evidence before the district court; Viola testified that she "promoted" the WellCare brand, sought out new beneficiary prospects, scheduled and hosted promotional events, advertised the events, identified and met with physicians to promote WellCare, and was charged with ensuring that these promotional events and physician visits

4

complied with the stringent federal regulations surrounding Medicare plans. (R.1-31-1, Viola Depo., p. 14 at 54:11-14; p. 14 at 56:11-25; p. 15 at 57:1-6; p. 17 at 65:4-11; p. 18 at 70:5-25; p. 18 at 71:23-24.)

A review of the record clearly demonstrates that Viola's employment directly related to CHMI's general business operations. Viola's own testimony and the job descriptions for her positions indicate that she was involved in developing, planning, and implementing strategies designed to promote and advertise the WellCare brand. Her activities required her to be active in the community and to network with various community and faith-based organizations in order to raise awareness of WellCare. As a consequence of her job, Viola was the "face" of WellCare in her market. This fact is confirmed by Viola's testimony that people would ask her about WellCare on her days off because they recognized her from her work. (*Id.*, p. 32 at 126:05-13.)

Viola argues, without citation to the record, that there is a conflict in the evidence as to whether she performed these functions for CHMI. (Appellant Br. at 11.) But, the record is replete with evidence that Viola performed marketing, advertising, public relations, and compliance functions in her job. Consequently, there is no genuine issue of material fact concerning the second, "primary duty" prong of the administrative exemption test. The evidence shows that Viola performed

qualifying functions while employed at CHMI, which satisfy the second prong of the test as a matter of law under the plain language of the DOL regulations.

Viola also argues that there is a genuine issue of material fact as to the third prong of the administrative exemption test: whether Viola's primary duties included the exercise of discretion and independent judgment with respect to matters of significance. Viola argues that the undisputed facts demonstrate that Viola "had virtually no ability to exercise discretion or independent judgment in matters of significance." (Appellant Br. at 15.) We disagree. Some of the factors to consider when determining whether an employee exercises discretion and independent judgment are "whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business" and "whether the employee provides consultation or expert advice to management." 29 CFR § 541.202(b). The record demonstrates that Viola worked alone more than seventy-five percent of the time and generally without supervision. (R.1-31-1, Viola Depo., p. 24 at 93:07-25.) Viola was required to analyze her market, looking for organizations and locations where potential customers would congregate, and to create a strategy to promote the WellCare brand and image. As a primary function of her employment, Viola chose which community and faith-based organizations to target, the boards on which to

6

serve as a representative of WellCare, and where to hold marketing and promotional events. Additionally, Viola testified that she wrote reports and business plans designed to identify targets and generate ideas on how to grow the business. (*Id.*, p. 23 at 90:02-10.) Viola's jobs also required her to negotiate the cost of marketing events, advise management where and how much company money to donate within the community, and design marketing and promotional events. (*Id.*, p. 22.) Additionally, Viola testified that she was entrusted with ensuring that her marketing strategies complied with the myriad of complex federal regulations surrounding Medicare, and a violation of these regulations could be detrimental to her employer. (*Id.*, p. 25 at 100:2-7; p. 35 at 138:3-23; p. 35 at 139:1-5; R.1-35-2, Van Valin Aff., at ¶ 18.) Though the record demonstrates that Viola was required to submit most of her plans to management before they were finalized, review of this kind does not disqualify an employee from the administrative exemption. *See* 29 CFR § 541.202(c) (explaining that "[t]he decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action" and may be "reviewed at a higher level"). Therefore, we conclude that Viola's duties show the use of discretion and independent judgment in matters of significance, satisfying the third prong of the administrative exemption test.

AFFIRMED.